## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**GEOFFREY R. McINTYRE,**                )
                                        )
           **Plaintiff,**           )
                                        )
                                        )    **Civil Action No. 05-0664 (ESH)**
                                        )
**MARY PETERS, Secretary,**              )
**United States Department of Transportation,**   )
                                        )
           **Defendant.**          )
_____ )

## <u>MEMORANDUM OPINION</u>

Plaintiff Geoffrey McIntyre, a sixty-four year-old African-American male, alleges that his non-selection for a promotion within the Federal Aviation Administration ("FAA") was due to age and race discrimination, as well as retaliation, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  Defendant has moved for summary judgment, arguing that plaintiff has failed to establish a *prima facie* case of discrimination based on retaliation, and has failed to rebut defendant's nondiscriminatory reasons for not selecting him. As explained herein, the Court grants defendant's motion in part and denies it in part.

### BACKGROUND

Plaintiff, who has a doctoral degree in transportation and public administration, began his career at the United States Department of Transportation ("DOT") in 1978 at the GS-13 level in the Maritime Administration.  (Pl.'s Opp. at 1; Pl. Ex. E [Pl. Dep.] at 22.)  In 1988, he joined the

FAA, a division of DOT, in a GS-15 level special assistant position.  (Pl.'s Opp. at 1; Pl. Ex. E

[Pl. Dep.] at 25-26.)  Plaintiff subsequently held several positions at the FAA, moving in 1996 to

a Program Analyst position at the FAA's Office of Assistant Administrator System Safety

("ASY"), where he was employed during the events at issue here.  (Pl.'s Opp. at 1.)  When ASY

was dissolved by Congress in 2005, plaintiff moved to a position in the Flight Standards Policy

and International Division where he is presently employed.  (Pl.'s Facts ¶¶ 14, 16.)[1]

On August 15, 2000, plaintiff filed an Equal Employment Opportunity ("EEO")

complaint alleging discrimination on the basis of race, age, and national origin after he was

rejected for a deputy assistant position within ASY.  (Def. Ex. Z [Pl. Interrog. Resp.] No. 4.)

According to plaintiff, during mediation for the 2000 EEO complaint he requested that a "Chief

Scientific and Technical Advisor for Risk Management" position be created for him within ASY,

but was told by Christopher Hart, the Assistant Administrator for System Safety, that ASY could

not support such a position.  (Pl.'s Facts ¶¶ 48, 49.)  Mediation concluded on April 23, 2001, and

ultimately the EEOC ruled in October 2003 that the agency had not discriminated.  (Pl.'s Facts

¶ 47; Def. Ex. Z [Pl. Interrog. Resp.] No. 5.)  In October 2002, Hart created a "special assistant

for risk analysis" position within ASY, and gave it to Dave Balderston, a white male.  (Pl. Decl.

¶ 11.)  This new position was, according to plaintiff, "very similar" to the position he had

---

[1]Local Civil Rule 7(h) provides that a "motion for summary judgment shall be
accompanied by a statement of material facts as to which the moving party contends there is no
genuine issue," and "[a]n opposition to such a motion shall be accompanied by a separate
concise statement of genuine issues setting forth all material facts as to which it is contended
there exists a genuine issue necessary to be litigated, which shall include references to the part of
the record relied on to support the statement."  Accordingly, defendant has filed a Statement of
Material Facts (Dkt. 23), and plaintiff has filed a response to defendant's statement (Dkt. 26).  In
addition, though not required to by Rule 7(h), plaintiff has filed his own Statement of Material
Facts (Dkt. 24), and defendant has responded to plaintiff's statement (Dkt. 32).  Where
appropriate, the Court refers herein to the fact statements of both parties.

requested during his EEOC mediation, and consisted of the same duties.  (*Id.* ¶ 14.)  Shortly

thereafter on November 4, 2002, plaintiff met with Hart and "asked him for an explanation as to

the difference between the new Balderston position and the position [plaintiff] had proposed in

the mediation on [his] 2000 EEOC charge."  (*Id.* ¶ 12.)  According to plaintiff, Hart did not

respond to plaintiff's request for an explanation.  (*Id.*)

Also on November 4, 2002, ASY division manager Wes Timmons announced the creation

of two "Team Lead" positions within plaintiff's division, ASY-300.  (Def.'s Facts ¶ 1; Def. Ex. B

[Timmons Nov. 4, 2002 e-mail].)  The positions' duties and responsibilities included "provid[ing]

technical direction and oversight to team," "coordinat[ing] . . . team efforts," and "assign[ing]

tasks and responsibilities to individual team members."  (Def. Ex. E [Job Analysis Tool].)  The

vacancy announcement listed the following "knowledge, skills, and abilities" ("KSAs") required

for successful applicants:

- Skill in managing human and financial resources to accomplish research and support objectives and ability to plan, organize, direct, and monitor the work of others.
- Skill in written and oral communications, including presentations to a high level, diverse audience.
- Knowledge of information management systems and safety management principles.

(*Id.*)  In announcing the new positions, Timmons wrote that they were intended to "provide

opportunities" for employees "interested in developing management skills so as to qualify for

more senior positions . . . ."  (Def. Ex. B [Timmons Nov. 4, 2002 e-mail].)  Plaintiff applied for

the Team Lead position along with other FAA employees.  The FAA personnel department

compiled a list of the four "best qualified" applicants -- plaintiff; Steve Smith (white male, age

fifty-six at selection); Robert Anoll (white male, age forty-four at selection); and Michael Alloco.

(Def.'s Facts ¶ 2; Def.'s Mot. at 3; Pl.'s Facts ¶ 58.)

The four "best qualified" candidates were interviewed first by a panel of three FAA employees from outside the ASY-300 division -- Estrella Gonzales, Brian Poole, and Thomas Fulcher -- whose stated purpose was to assess the candidates' managerial or leadership potential. (Def.'s Facts ¶¶ 5, 6.) The panel devised a series of nine questions and asked the same questions of all the interviewees. (*Id.* ¶ 7.) Each panelist then scored the candidates based on their performance on each question using a numerical scoring system that they had developed. (*Id.* ¶ 8.) As recorded on Poole's scoring sheets for each question, Smith received a total of 31 points for all his interview answers, and Anoll, Alloco and plaintiff each received 23 total points.[2] (Def. Exs. M, N, O [Poole scoring sheets].) The notes of the other two panelists were not retained, but Timmons' notes about the panel's findings indicate that one of the other two panelists may have given Smith 29 total points, Anoll and Alloco 25, and plaintiff 23. (Def. Ex. Q [Timmons notes]; *see also* Def. Ex. C [Timmons Dep.] at 81.) All three panelists have criticized plaintiff's interview performance, stating, for example, that plaintiff did not give direct answers to their questions and had the demeanor of a "college professor," "lecturing" or "preach[ing]" rather than

---

[2]After scoring each applicant on each question, the panelists recorded their question scores and totals for all the candidates on ranking sheets. (*See* Def. Ex. P [Poole ranking sheet].) As plaintiff points out, Poole's ranking sheet appears to have several addition and transcription errors. (Pl.'s Resp. to Def.'s Facts ¶ 12.) The points that Poole listed for each of the nine questions on the ranking sheet total 23 for plaintiff and 22 for Anoll, but the numbers listed in the "total" column are 23 and 23 respectively, suggesting an addition error in Anoll's favor. (Def. Ex. P [Poole ranking sheet].) However, as noted above, the totals of the nine question scores listed on each applicants' individual scoring sheets are 23 and 23 respectively, corresponding to the "total" column on the ranking sheet. (Def. Exs. M, N, O [Poole scoring sheets].) Poole transcribed Anoll's score for the ninth question as a "3" on the ranking sheet, though he had given Anoll a "4" on the ninth question on the actual interview scoring sheet, resulting in the apparent mathematical error. (*See* Def. Ex. P [Poole ranking sheet]; Def. Ex. O [Poole's scoring sheet for Anoll interview] at ¶ 9.)

responding to interview questions.  (*See* Def. Ex. I [Gonzales Decl.] ¶ 10; Def. Ex. G [Poole

Decl.] at 4; Def. Ex. L [Fulcher Dep.] at 35:17-36:21.)

After scoring each candidate individually, the panel then compared their impressions of

the four candidates and came to a "consensus" about the quality of each candidate's answers.

(Pl.'s Facts ¶ 62.)  According to Poole's ranking sheet, the four ASY-300 candidates were ranked

with Smith as first, Anoll second, Alloco third, and plaintiff last.  (Def. Ex. P [Poole ranking

sheet].)  As plaintiff points out, the other two panelists whose notes were not retained could have

recorded a different ranking of the four panelists, though Poole and Fulcher stated that the panel

developed a ranking together.  (*See* Pl.'s Resp. to Def.'s Facts ¶ 12; Def. Ex. J [Poole Dep.] at 58;

Def. Ex. H [Fulcher Decl.] at 2.)  Poole testified that Anoll and plaintiff both had the same

interview score, but the panel decided to rank Anoll above plaintiff because Anoll had a cold on

the day of his interview, and the panel believed that he was more "capable" than his interview

performance indicated.  (Def. Ex. J [Poole Dep.] at 27-28, 54-56; Def. Ex. G [Poole Decl.] at 4;

*see also* Pl. Ex. F [Timmons Dep.] at 134-35.)

At the end of their evaluation process, two of the panelists verbally reported their findings

to Timmons, the selecting official for the positions, and Timmons recorded the panel's ranking of

the candidates.  (Pl.'s Facts ¶¶ 66, 68; *see* Def. Ex. Q. [Timmons notes].)  Timmons understood

from this debriefing that the panel felt that because Anoll had a cold on the day of his interview,

he had "more potential" than his interview performance indicated, and that they "rated [him]

higher" for that reason.  (*Id.* ¶ 66; Pl. Ex. F [Timmons Dep.] at 134-35.)  Timmons also conducted

his own interviews of the four best-qualified candidates.  (Def.'s Facts ¶ 13.)  According to

defendant, Timmons asked all the candidates the same two questions and also assessed their

qualifications using the KSAs set forth in the vacancy announcement.  (*Id.* ¶¶ 13-15.)  Ultimately,

he selected Smith and Anoll for the two positions, citing their past supervisory experience, job

performance, and the ratings of the panel as the reasons for his selections.  (*Id.* ¶ 16;  Def. Ex. R

[personnel approval form] at 2.)  Timmons noted that Smith had five years of management

experience and Anoll had over twelve years of "recent team lead/supervisory experience," but he

"did not see any formal supervisory or management" experience on plaintiff's application.  (Def.

Ex. R [personnel approval form] at 2.)  Timmons' selection of Smith and Anoll was then

approved by Hart on April 21, 2003.  (Pl.'s Facts ¶ 84; Def. Ex. R [personnel approval form] at

1.)  Plaintiff was sixty-one at the time of his non-selection.  (Pl.'s Decl. ¶ 15.)

The FAA's human resource policy manual requires that "[d]ocumentation of competitive

placement actions . . . be retained for 2 years from the closing date of the vacancy

announcement," or, if an EEO complaint is filed relating to the placement, until that matter is

closed.  (Pl.'s Facts ¶ 85.)  Despite this requirement, defendant apparently failed to retain certain

documentation relating to the selection process for the ASY-300 Team Lead positions.  Neither

Fulcher nor Gonzales retained any notes or scoring sheets from the panel's evaluation process.

Gonzales does not remember leaving the final interview with any documents, while Fulcher

shredded his interview questionnaires along with other documents in his office when he retired.

(*Id.* ¶¶ 89, 90; Def. Ex. K [Gonzales Dep.] at 30:1-12; Pl. Ex. J [Fulcher Dep.] at 28:4-24.)  In

addition, Timmons only retained his notes from his interview with plaintiff; he did not retain

notes regarding the selectees' interview responses.  (Pl.'s Facts ¶ 88.)  He testified that he does

not know if he had a "really good reason" for only retaining his notes on plaintiff other than when

Timmons informed plaintiff that he had not been selected, plaintiff "got up and left the office"

before Timmons could explain the reasons for his non-selection.  (*Id.*; Def. Ex. C [Timmons Dep.] at 115:24-116:13.)

　　　As stated in his complaint, plaintiff initiated EEO counseling on April 10, 2003, and after learning that he had not been selected for the Team Lead positions, plaintiff filed a discrimination complaint with the FAA on June 10, 2003, alleging race and age discrimination and retaliation. (Compl. ¶ 5.)   On February 4, 2005, the FAA dismissed plaintiff's EEO complaint, and plaintiff then filed this suit on April 1, 2005.  (*Id.*)

## ANALYSIS

### I.　　　Standard of Review

　　　Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255; *see also Wash. Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

　　　The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party must provide evidence that would permit a reasonable jury to find in its favor.  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted).  "While summary judgment must be approached with special caution

in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by

affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v.*

*Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation

omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000).

## II.      Discrimination Claims

When, as here, the record contains no direct evidence of discrimination, allegations of race

discrimination and retaliation under Title VII and age discrimination under the ADEA are all

analyzed under the familiar *McDonnell Douglas* three-part "shifting burdens" test.  *See McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Brown v. Brody*, 199 F.3d 446, 452 (D.C.

Cir. 1999) (applying *McDonnell Douglas* framework to federal employee' s Title VII claims);

*Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (applying framework to ADEA claims).

Plaintiff has the initial burden of proving a *prima facie* case of discrimination.  *McDonnell*

*Douglas*, 411 U.S. at 802.  If he succeeds, the burden shifts to defendant to articulate some

legitimate, nondiscriminatory and nonretaliatory reason for its actions.  *See id.*  Its burden is only

one of production, and it "need not persuade the court that it was actually motivated by the

proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has

met its burden of production (and has thus rebutted any legal presumption of intentional

discrimination) can involve no credibility assessment.").  If defendant is successful, then "the

*McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole

remaining issue [is] discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted).  At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision.  *Burdine*, 450 U.S. at 256; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) ("Although the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (internal quotation marks omitted)).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]."  *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997).  Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason."  *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)) (internal quotation marks omitted).  "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers."  *Id.* (internal citations and quotation marks omitted).  In other words, a district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions."  *Id.*

###### A.    Retaliation Claim

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter."  *Id.* § 2000e-3(a) (the "opposition clause").  In order to seek the protection of the opposition clause, plaintiff must be able to "demonstrate a good faith, reasonable belief that the challenged practice violates Title VII."  *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (quoting *Parker v. Baltimore and Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981) (internal quotation marks omitted)); *see also Welzel v. Bernstein*, 436 F. Supp. 2d 110, 118 (D.D.C. 2006).  The anti-retaliation provision also makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a) (the "participation clause").  To establish a *prima facie* case for retaliation under *McDonnell Douglas*, a plaintiff must show that he engaged in statutorily protected activity; that he suffered from an adverse employment action; and that a causal connection existed between the two.  *See Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).

Here, defendant concedes that plaintiff has satisfied the first two elements of the *prima facie* case for retaliation; specifically that he engaged in protected activity by filing his August 2000 EEO complaint, and that his non-selection for the Team Lead position in April 2003 constituted an adverse employment action.  (Def.'s Mot. at 18.)  But defendant argues that plaintiff

is unable to establish causation under the third element of the *prima facie* case because too much time has elapsed between the filing of the EEO complaint in August 2000 and plaintiff's non-selection in April 2003.  (*Id.*)  In response, plaintiff argues that his most recent protected activity was only five months prior to his non-selection when plaintiff questioned Hart in November 2002 about the differences between Balderston's new position and the position plaintiff requested during his April 2001 EEO mediation.  (Pl.'s Opp. at 9.)

   In the absence of direct evidence, the Court may infer a causal connection between protected activity and an adverse employment action on a "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *see also Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006); *Willingham v. Gonzales*, 391 F. Supp. 2d 52, 61 (D.D.C. 2005) ("By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed for a *prima facie* case of retaliation." (quoting *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 42-43 (D.D.C. 2001)) (internal quotation marks omitted)).  While courts have not definitely "established the maximum time lapse between protected Title VII activity and alleged retaliatory actions,"  *Brodetski*, 141 F. Supp. 2d at 43, it is well established that the temporal proximity between the two must be "very close" to show a causal connection.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases finding temporal proximity of four and three months insufficient to demonstrate a causal connection). This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.  *See Willingham*, 391 F. Supp. 2d at 61-62; *see also Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C.

2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a

retaliation case"), *aff'd*, No. 04-5181, 2004 WL 2348142, (D.C. Cir. Oct. 19, 2004), *reh'g denied,*

No. 04-5181 (D.C. Cir. Feb. 11, 2005).  Under this precedent, the August 2000 EEO complaint and

the EEO mediation concluding in April 2001 are both far too distant -- thirty-two and twenty-four

months respectively -- from the April 2003 non-selection to allow a reasonable juror to infer a

retaliatory motive.  Consequently, plaintiff's retaliation claim hinges on whether the November

2000 meeting with Hart constituted protected activity under Title VII and whether the Timmons

had knowledge of it before he made his selection for the Team Lead positions.

First, the record does not support plaintiff's contention that the November 2002 meeting

constituted protected activity.  Title VII prohibits an employer from discriminating because an

employee "has opposed any practice made unlawful employment practice by this subchapter."  42

U.S.C. § 2000e-3.  However, "not every complaint garners its author protection under Title VII."

*Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).  As the D.C. Circuit has recently

explained, "[w]hile no 'magic words' are required" to mark an exchange as protected activity, "the

complaint must in some way allege unlawful discrimination, not just frustrated ambition."  *Id*.; *see*

*also Pope v. ESA Servs., Inc*., 406 F.3d 1001, 1010 (8th Cir. 2005) (finding that an employee's

comments about absence of black employees, without attributing the absence to discrimination,

were insufficient to qualify as protected activity); *Welzel*, 436 F. Supp. 2d at 122-23 (holding that

employee's complaint about what she perceived to be unprofessional and abusive behavior by

supervisor was not protected activity where employee did not state a belief that the conduct violated

Title VII).  In the present case, there is no evidence that plaintiff indicated to Hart that he attributed

the Balderston promotion to race or age discrimination.  Plaintiff's motion baldly asserts that he

-12-

"questioned [d]efendant's favoritism of a white male" at the November 2002 meeting (Pl.'s Opp. at
9), but this statement is unsupported by the record and mischaracterizes plaintiff's sworn
declaration.  Plaintiff's declaration, the only evidence in the record regarding the November 2002
meeting, simply states: "On November 4, 2002, I met with Hart and asked him for an explanation as
to the difference between the new Balderston position and the position I had proposed in the
mediation on my 2000 EEOC charge . . . ; Hart did not answer me."  (Pl.'s Decl. ¶ 12.)  Plaintiff
offers no evidence that he complained of discrimination in this meeting or that he attributed
Balderston's selection for the new position to any type of discrimination.  With *no* factual support
for the assertion in plaintiff's pleadings that he "questioned [d]efendant's favoritism of a white
male," plaintiff has failed to demonstrate that he engaged in protected activity when he met with
Hart in November 2002.

　　　Second, even assuming *arguendo* that the November 2002 conversation between plaintiff
and Hart qualifies as protected activity, plaintiff has not presented any evidence that Timmons had
any knowledge of that activity.  To support a retaliation claim, a plaintiff must show that the alleged
discriminating official's knowledge of prior protected activity preceded the official's contemplating
adverse action.  *Laboy v. O'Neill*, No. 01-5322, 2002 WL 1050416, at *1 (D.C. Cir. March 13,
2002) (citing *Breeden*, 532 U.S. at 272-73).  Here, it is undisputed that Timmons was the selecting
official for the Team Lead positions, and Hart merely approved Timmons' selections *pro forma*.
(*See* Pl.'s Facts ¶ 84.)  But plaintiff has presented no evidence that Timmons was even aware of the
meeting between Hart and plaintiff on November 4, 2002, much less of the contents of such a
meeting.[3]  Plaintiff claims, without offering any evidentiary support, that because Timmons was the

_____

　　　[3]Plaintiff has not alleged that any of the panel members acted with a retaliatory motive
(*see* Pl.'s Opp. § II.A), and there is no evidence in the record that they were aware of plaintiff's

designated EEOC "point of contact" for the office, "a reasonable juror could . . . infer that Timmons knew about the conversation between plaintiff and Hart in November of 2002 . . . ." (Pl.'s Opp. at 10.)  This type of conclusory statement is insufficient to survive summary judgment.  *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule.").  Timmons testified that as the EEOC point of contact for ASY, he was generally "aware" of EEO complaints that were filed, and was responsible for the "administration and tracking" of such complaints.  (Def. Ex. C [Timmons Dep.] at 60:11-61:15.)  He also testified that he was not "substantively" involved with the complaints themselves.  (*Id.*)  For his part, plaintiff has presented no evidence that Timmons knew about the conversation, nor has he presented any evidence that an EEOC point of contact could reasonably be expected to know about such an informal conversation.  Without more, plaintiff cannot create a jury question regarding whether the decisionmaker had knowledge of plaintiff's protected activity.[4]

---

meeting with Hart.

   [4]Plaintiff points to the fact that when Hart learned of Timmons' selections, he warned Timmons that he needed to have "very sound and solid and good reasons for not selecting [plaintiff] because if [plaintiff] were not selected, we might see another EEO complaint."  (Pl.'s Opp. at 11; Def. Ex. D [Hart Dep.] at 50:14-20.)  This, he claims, along with the fact that Timmons retained his notes about plaintiff's interview but not the interview notes relating to the selectees, shows that "the decisionmakers were well aware of [p]laintiff's EEO activity at the time they made their non-selection decision, and that they acted specifically with his protected activity in mind."  (Pl.'s Opp. at 11.)  This argument makes no sense.  First, it is undisputed that Hart and Timmons knew of plaintiff's August 2000 EEO complaint; the issue is whether the selecting official -- Timmons -- knew of any more recent protected activity such that there was a reasonable temporal proximity to the non-selection.  Second, as plaintiff's brief acknowledges, both the statement by Hart and the retention of Timmons' interview notes came *after* the non-selection decision.  The relevant fact is what the selecting official knew *at the time of* the decision.

Because plaintiff cannot establish a causal connection between his protected activity and the non-selection at issue here, he has failed to establish a *prima facie* case of discrimination based on retaliation.  Defendant's motion for summary judgment is therefore granted as to plaintiff's retaliation claim.

### B.      Race and Age Discrimination Claims

Defendant concedes that plaintiff can make out a *prima facie* case of race and age discrimination because as an African-American male over the age of forty, he belongs to classes protected by Title VII and the ADEA, he suffered an adverse personnel action when he was not selected for the Team Lead position, and the non-selection gave rise to an inference of discrimination.  (Def.'s Mot. at 9.)  Defendant likewise has met its burden under the second step of the *McDonnell Douglas* framework by articulating a legitimate, nondiscriminatory reason for plaintiff's non-promotion.  Specifically, defendant asserts that plaintiff was not selected for one of the Team Lead positions because of (1) his "inadequate" interview performance, and (2) his "lack of previous supervisory experience."  (*Id.* at 10.)  Defendant points to specific problems with plaintiff's interviews, and states that Timmons "assessed the candidates's qualifications based on the criteria set forth in the KSA" and did not see any supervisory experience on plaintiff's resume, while the two selectees each had a number of years of supervisory experience.  (*Id.* at 10-16.)  By articulating these nondiscriminatory reasons, defendant has rebutted plaintiff's *prima facie* case. *See Carter v. George Washington Univ.*, 387 F.3d 872, 880 (D.C. Cir. 2004) (holding that plaintiff had failed to rebut employer's proffered legitimate, nondiscriminatory reason for plaintiff's non-selection that she "interviewed poorly"); *Stewart v. Ashcroft*, 352 F.3d 422, 428-29 (D.C. Cir. 2003) (finding that superior managerial qualifications of a chosen applicant was a legitimate,

nondiscriminatory reason for plaintiff's non-selection).

The Court's analysis therefore turns to the third step of the *McDonnell Douglas* framework, under which the burden shifts back to the plaintiff to rebut the defendant's stated reason by presenting sufficient evidence such that a reasonable fact finder could find that the "proffered reason is but a pretext for discrimination." *Paquin*, 119 F.3d at 27. Both plaintiff's brief and his factual statement emphasize his "numerous qualifications, extensive experience, and remarkable achievements" within the FAA, devoting many pages to listing his academic and professional accomplishments and referring to him as "one of the world's foremost authorities on safety management principles." (Pl.'s Opp. at 1-4; Pl.'s Facts ¶¶ 3-38.) However, an employer has discretion to choose among qualified candidates for a position, and absent a demonstrably discriminatory motive, courts lack the authority to second-guess what nondiscriminatory qualities -- in this case, supervisory experience -- it will seek in filling a position. *See Burdine*, 450 U.S. at 259; *Fischbach*, 86 F.3d at 1183; *Stewart*, 352 F.3d at 429. Moreover, plaintiff's qualifications for the Team Lead position are not in and of themselves sufficiently superior to those of the selectees to suggest pretext. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (factfinder can legitimately infer discrimination where "reasonable employer would have found the plaintiff to be *significantly better qualified* for the job" (emphasis added)); *Stewart*, 352 F.3d at 429 (no inference of discrimination where the evidence presented no "stark superiority" of plaintiff's credentials over those of the successful applicants).

Although he emphasizes his qualifications, plaintiff does not, however, argue that his qualifications are so superior as to be indicative of discrimination, and he insists that he is "not asking the Court to second-guess [d]efendant's choice of qualifications." (Pl.'s Opp. at 13, 14.)

Instead, plaintiff points to other evidence to demonstrate that defendant's proffered reasons for the non-selection are not worthy of credence.  As the Circuit Court has made clear, "a plaintiff attacking a qualifications-based explanation is expressly *not* limited to comparing [his] qualifications to those of the successful applicant; [he] may seek to expose other flaws in the employer's explanation . . . ."  *Holcomb*, 433 F.3d at 897 (citing *Aka*, 156 F.3d at 1295, 1290) (emphasis in original); *see also Reeves*, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").  To that end, plaintiff essentially makes three arguments: (1) supervisory experience was not a requirement for the Team Lead jobs; (2) the interview process for the positions was improperly subjective; and (3) defendant's failure to retain certain documentation regarding the selection decision gives rise to an adverse inference of discrimination.  (Pl.'s Opp. at 12-19.)  The Court finds that these three issues, when taken together, present sufficient issues of fact to preclude the granting of summary judgment on plaintiff's race and age discrimination claims.

First, plaintiff claims that supervisory experience was not a requirement for the Team Lead position, but on the contrary, the stated purpose of the position was to provide individuals with an opportunity to develop management skills so as to qualify for more senior positions.  (*Id.* at 12.)  This, he contends, shows that one of defendant's proffered reasons for the non-selection -- that plaintiff had no prior supervisory experience -- is false, and that the supervisory experience requirement was made up after the fact to justify plaintiff's improper non-selection.  (*Id.* at 12-14.)  In support of this claim, plaintiff cites, *inter alia*, to Hart's deposition testimony and Timmons' e-mail announcing the creation of the Team Lead jobs.  (*Id.*)  Hart testified that the positions were

created in response to a frustration with the lack of leadership opportunities at ASY and were

intended to give ASY employees a chance to "be in a leadership position" so they could "move on

to another leadership position and say in their resume, [l]ook, I've done this."  (Pl. Ex. G [Hart

Dep.] at 77-78.)  Similarly, Timmons' e-mail describes the Team Lead jobs as "developmental

positions that will improve opportunities for those individuals that are interested in developing

management skills so as to qualify for more senior leadership positions . . . ."  (Def. Ex. B

[Timmons e-mail] at 2.)  A juror could infer from these statements that because the jobs were

intended to provide supervisory opportunities to those who might not otherwise have them,

previous supervisory experience would not be a logical prerequisite.  In contrast, Timmons testified

that he interpreted the KSA regarding "[s]kill in managing human and financial resources to

accomplish research and support objectives and ability to plan, organize, direct, and monitor the

work of others" to be a requirement of prior supervisory experience.  (Def. Ex. C [Timmons Dep.]

at 71:8-71:23.)  Hart explained that the selection decision was based on prior supervisory

experience in order to "maximize the extent to which [they] brought previous leadership experience

into these positions."  (Pl. Ex. G [Hart Dep.] at 79.)  In addition, Timmons' comments on the

selection approval form cite the supervisory experience of both selectees first among the reasons for

their selection.  (Def. Ex. R [personnel approval form] at 2.)

        The Court concludes that there is a genuine issue of fact as to whether the Team Lead

position as originally conceived did in fact require supervisory experience.  If a factfinder

determines that such experience was not a genuine requirement, he or she may reasonably infer that

plaintiff's lack of supervisory experience is not the true reason for his non-selection.  While an

employer is protected from courts second-guessing which legitimate reasons it chooses to base

employment decisions on, it is not protected "against attacks on its credibility." *Chapman v. AI Transp.*, 229 F.3d 1012, 1048 (11th Cir. 2000) (*en banc*) (Birch, J. concurring in part and dissenting in part).

Next, plaintiff argues that the interview process for the positions was improperly subjective, and defendant's reliance on plaintiff's "inadequate" interview performance masks discrimination. (Pl.'s Opp. at 20-21.)  While "employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution."  *Aka*, 156 F.3d at 1298.  The assessment of interview performance is inherently subjective, and here, there is evidence in the record that, while the panel's interview procedure may have involved pre-specified questions, its selection process was not applied uniformly to all candidates.  In particular, a reasonable juror may choose to disbelieve Poole's testimony that the panel ranked Anoll above plaintiff, despite identical overall scores, because the panel felt that Anoll "didn't demonstrate the capability that [they] thought he had" because he was sick on the day of the interview.  (Def. Ex. J [Poole Dep.] at 27-28.)  When asked to describe the basis for that decision, Poole stated, "that was our feeling."  (*Id.* at 54-56; *see also* Def. Ex. G [Poole Decl.] at 4.)  This evidence may also raise a question of whether the interview process was administered fairly, thereby casting a shadow over defendant's second proffered reason for the non-selection -- plaintiff's interview performance.  *See Salazar v. WMATA*, 401 F.3d 504, 508-09 (D.C. Cir. 2005) (holding that genuine issue of fact as to whether employer fairly administered promotion selection process precluded summary judgment in failure to promote case, where "reasonable juror could infer that . . . the selection process was geared not to finding the best person for the position, but rather to keeping [plaintiff] from advancing").

Finally, plaintiff asserts that defendant's "spoliation" of documentation regarding the selection decision -- specifically the questionnaires and scoring sheets of panelists Gonzales and Fulcher and Timmons' notes on selectee's interviews -- compels "an inference that the missing evidence was unfavorable to the agency." (Pl.'s Opp. at 18-19.) Plaintiff misapplies the Circuit's law on spoliation, for the "[d]estruction of notes or other documents purportedly relevant to a case of discrimination has no effect . . . except when the circumstances of destruction provide[] 'a basis for attributing bad faith to' the agency involved." *Coleman v. Casey*, 1986 WL 11744, at *5 (D.D.C. June 19, 1986) (quoting *Valentino v. United States Postal Serv.*, 674 F.2d 56, 73 n.31 (D.C. Cir. 1982)). Plaintiff has not made, nor even attempted, such a showing of bad faith regarding the destruction, and thus no adverse inference is mandated based on the spoliation doctrine. Nevertheless, defendant's failure to follow its own policy requiring the retention of employment decision documents (*see* Pl. Ex. D [FAA Human Resource Policy Manual] at 8), when viewed in light of plaintiff's other evidence of pretext, raises a credibility question that is properly left to the jury. *See Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003) (holding that an agency's departure from it normal procedure without justification "can justify an inference of discriminatory motive"); *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982) (noting that although "a failure on the part of the . . . employer to follow its own regulations and procedures, alone, may not be sufficient to support a finding of . . . discrimination," such a failure "is a factor that the trier of fact may deem probative . . . in  determining the true motivation behind the hiring decision").

When taken together, the factual issues raised by the plaintiff, any one of which might well be insufficient by itself, provide sufficient evidence to allow a reasonable juror to conclude that defendant's proffered reasons for plaintiff's non-selection were pretextual. *See Byrnie v. Town of*

*Cromwell Bd. of Educ.*, 243 F.3d 93, 102, 107 (2d Cir. 2001) (holding that a plaintiff's "mixed bag of evidence" undermining employer's proffered justification for non-selection -- including destruction of notes, predominance of subjective hiring criteria, and reliance on "poor interviewing skills" explanation -- "is adequate to defeat summary judgment").  Therefore, defendant's motion for summary judgment is denied with respect to plaintiff's race and age discrimination claims.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted as to plaintiff's retaliation claim, and denied as to plaintiff's race and age discrimination claims.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 6, 2006